253 So.2d 344

In re Roland JOHNSON

v.

STATE of Alabama.

Ex parte Roland Johnson.

8 Div. 426.

Supreme Court of Alabama.

June 30, 1971.

William J. Baxley, Atty. Gen. and Richard F. Calhoun, Asst. Atty. Gen., for respondent, the State.

William H. Rogers, Moulton, for petitioner.

HARWOOD, Justice.

Among the grounds of the Petition for Writ of Certiorari was that the Court of Criminal Appeals did not follow the holding of this court in holding that the trial court "did not err in denying the appellant's motion to exclude the evidence nor in denying the affirmative charge," in that such conclusion is in conflict with Lang v. State, 252 Ala. 640, 42 So.2d 512, and the pronouncements in that case as to the measure of proof essential to convict a person charged with a felony, where the evidence presented is circumstantial.

The facts in this case are undisputed. The appellant offered no evidence in the trial below. There being no dispute about the facts, we may go to the record for a more complete understanding of those features treated in the opinion of the Court of Criminal Appeals. Johnson v. State, 277 Ala. 655, 173 So.2d 824; Helms v. State, 270 Ala. 603, 121 So.2d 106; Southern Railway Co. v. Terry, 268 Ala. 510, 109 So.2d 919; Vardaman v. Benefit Ass'n of Railway Employees, 263 Ala. 236, 82 So.2d 272; Cranford v. National Surety Corp., 231 Ala. 636, 166 So. 721; Hood v. State, 230 Ala. 343, 162 So. 543.

In connection with the testimony of Mrs. Cleo Clark, the record shows that when she saw the two boys at Mrs. Bryant's automobile, neither being the appellant, she did not pay particular attention to them as she "figured" they had come to repair Mrs. Bryant's automobile. She went into her house and later heard some "blundering" at the automobile. We think a significant portion of Mrs. Clark's testimony was that it was "after dinner," between 2:30 and 4:00 P.M., that she observed the two boys at the automobile.

In chronological sequence the evidence shows that Mrs. Bryant's malfunctioning or nonfunctioning automobile was left in front of the Clark home around 9:00 A.M. When Mrs. Bryant returned to her automobile at 1:00 P.M., the battery had been taken from the automobile and it had been otherwise damaged.

Between 11:00 A.M., and noon on the day in question, Earl Clark had seen the defendant, his brother, and a McCaghren boy riding north in a truck on the road on which the Bryant automobile was parked. The truck was then between a quarter and a half mile from where the Bryant automobile was parked. He recognized the truck as belonging to Omie Johnson, the appellant's father.

The testimony of Omie Johnson and Chamness, the deputy sheriff, merely shows that a blue truck had been driven away from Omie Johnson's garage by some person and abandoned on a road in Lawrence County. Johnson did not know who had driven the truck off. When Johnson recovered his truck the battery from the Bryant automobile was in the truck.

Analysis of the state's evidence shows only that the appellant was observed in his father's truck with two other boys driving along a public road between 11:00 A.M., and noon on the day in question about a quarter to a half mile away from where Mrs. Bryant's automobile was parked, and the stolen battery was found in the truck.

Mrs. Cleo Clark's testimony is of little probative value in connecting the appellant with this offense. She testified that neither of the two boys she had very casually observed at the Bryant automobile was of similar size to the appellant, and she saw no other person at the Bryant automobile. Further, she testified that the two boys were observed by her "after dinner" between 2:30 and 4:40 P.M.

No better statement of the doctrines of our cases, and we may add of the former Court of Appeals, may be found than that by Stone, J., in Ex parte Acree, 63 Ala. 234:

"The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires."

The only inference raised by the state's evidence in this case is that it was possible that defendant may have committed the offense with which he was charged. Be-

yond this possibility resort must be had to surmise, speculation, and guesswork to establish the appellant's criminal agency and connection with the offense charged. No rule is more fundamental or better settled by a myriad of cases of this court, and of the former Court of Appeals, than that a conviction cannot be predicated upon such bases. See 6 Ala.Dig., Crim.Law, ⟰ No. 560, for innumerable authorities enunciating this doctrine.

The appellant was due to have been granted in the trial court his motion to exclude the evidence, and to have had given his requested affirmative charge.

It is our view that the decision and judgment of the Court of Criminal Appeals is in conflict with the prior decisions of this court touching on the degree of proof required to sustain a conviction on circumstantial evidence. The judgment of the Court of Criminal Appeals is due to be reversed.

Reversed and remanded.

HEFLIN, C. J., and SIMPSON, COLEMAN, BLOODWORTH and McCALL, JJ., concur.

LAWSON, MERRILL and MADDOX, JJ., concur specially.

LAWSON, Justice (concurring specially).

We granted the writ of certiorari to review the decision and judgment of the Court of Criminal Appeals in the case of Johnson v. State, Ala.Cr.App., 253 So.2d 343.

The opinion of the Court of Criminal Appeals shows that a battery was stolen from the automobile of Mrs. Ethel Bryant sometime between 9:00 a. m. and 1:00 p. m. on July 9, 1969.

The battery was found in an old pickup truck which had been abandoned on a highway in Lawrence County. The truck belonged to Omie Johnson, the father of the defendant, with whom the defendant resided.

On the morning of July 9, 1969, the truck was driven away from Omie Johnson's garage by a person unknown.

Sometime between 11:00 a. m. and noon on July 9, 1969, the defendant in the trial court and two other boys were seen riding in the truck at a point one-quarter to one-half mile north of the place where Mrs. Bryant's car was parked when the battery was removed from it. The truck was being driven in a northerly direction away from the Bryant automobile.

An old blue pickup truck was observed as it stopped at the place where Mrs. Bryant's automobile was parked. Two boys were seen as they got out of the truck. Neither fitted the description of the defendant in the trial court. A third boy was not observed. The witness did not say, according to the opinion of the Court of Criminal Appeals, that she saw the boys get out of the truck before 1:00 p. m. on the day in question, the time when the loss of the battery was discovered. This witness, according to the opinion of the Court of Criminal Appeals, said that "she was unable to testify as to the time she saw the boys, other than it was after dinner." This statement, in my opinion, is not sufficient to support a finding that the witness saw the boys before 1:00 p. m. The evidence as delineated in the opinion of the Court of Criminal Appeals does not show what time the witness had dinner on the day in question and even if it did, the fact that the witness saw the boys sometime after dinner would not, as I have indicated above, justify a finding that she saw the boys prior to 1:00 p. m.

On certiorari here, we do not review findings of fact made by the Court of Criminal Appeals from the transcript of the record presented to it. Our function on certiorari is to review the rulings of that court to ascertain if it has correctly determined legal conclusions from facts found by it to exist in the record, or has misap-

plied the law to such facts. Lancaster v. State, 214 Ala. 2, 106 So. 617; Milazzo v. State, 238 Ala. 241, 189 So. 907; Parham v. State, 217 Ala. 398, 116 So. 418; Stallings v. State, 249 Ala. 1, 32 So.2d 233; Morrison v. State, 267 Ala. 258, 100 So.2d 746; Flournoy v. State, 270 Ala. 448, 120 So.2d 124; Farris v. State, 272 Ala. 278, 130 So.2d 58; Kozlowski v. State, 248 Ala. 304, 27 So.2d 818; Neely v. State, 207 Ala. 585, 93 So. 382; Ex parte Thaggard, 276 Ala. 117, 159 So.2d 820.

In Parham v. State, *supra*, Mr. Justice Brown, writing for the court, said as follows:

"It is a settled rule that this court, upon certiorari, will review the Court of Appeals only on questions of law, and not upon the finding of fact or application of the law to the facts, or the application of the doctrine of error without injury, unless the facts are fully stated in the opinion of the Court of Appeals so that a review may be effected without an examination of the record filed in the Court of Appeals. Postal Tel. [Cable] Co. v. Minderhout, 195 Ala. 420, 71 So. 91; Birmingham So. R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339; Campbell v. State, 216 Ala. 295, 112 So. 902; Ex parte Steverson, 211 Ala. 597, 109 So. 912. This precludes a review of the Court of Appeals in dealing with the refusal of the affirmative charge where, as here, all the facts of the case are not stated in the opinion of the Court of Appeals." (217 Ala. 399, 116 So. 418.)

In Rainey v. State, 245 Ala. 458, 17 So.2d 687, in an opinion written for the court by Mr. Justice Foster, it is said:

"Given the evidence as recited by the Court of Appeals, the question is, what is its legal effect? As on this appeal, that question is usually presented by a ruling in the trial court on a request for the affirmative charge. When we pass on the legal effect of the evidence as justifying the requested charge, we do not review any factual finding by the Court of Appeals, nor their judgment as to the weight of the evidence. Craft v. Standard Accident Ins. Co., 220 Ala. 6(12), 123 So. 271; Frick Co. v. Monroe, 220 Ala. 1, 123 So. 262; Lancaster v. State, 214 Ala. 2(5), 106 So. 617.

"If the evidence is not set out in the opinion of the Court of Appeals its finding as to what the evidence shows is conclusive on our review, whether or not the question relates to the affirmative charge (Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829); but whether such finding justifies the affirmative charge as a matter of law is reviewable. *If the evidence is set out in the opinion, we will review its sufficiency to justify the affirmative charge, though the Court of Appeals may have made a finding of facts from that evidence.*" (Emphasis supplied.) (245 Ala. 460, 17 So.2d 688)

In Haywood v. State, 280 Ala. 171, 190 So.2d 728, Mr. Justice Harwood, writing for the court, said as follows:

"The sole ground of the petition for a writ of certiorari relates to the refusal of the written requested affirmative charge with hypothesis requested by the appellant. Our review is limited to this ground, and we will of course look only to facts as stated by the Court of Appeals. Ex parte Thaggard, 276 Ala. 117, 159 So.2d 820.

"We are in full accord with the opinion of the Court of Appeals and its application of the legal doctrines involved as applied to the facts." (280 Ala. 172, 190 So.2d 729)

I am of the opinion that there is an adequate statement of the facts in the opinion of the Court of Criminal Appeals to authorize this court to review the application of the law to the facts as stated in that court's opinion and I am in accord with the holding of this court to the effect that the trial court erred in refusing

to grant the motion of the defendant in the trial court to exclude the State's evidence and in refusing to give at his request the general affirmative charge in his favor.

But I cannot agree with the court's action in going to the original record to determine for itself whether the evidence was sufficient to present a question for the jury's consideration.

In many cases, old and recent, this court has steadfastly adhered to the rule that when called upon to review the Court of Appeals (Court of Criminal Appeals— Court of Civil Appeals) by certiorari, we will not review the evidence as set out in the record to determine for ourselves what the facts of the case really are, but will accept and act upon the findings of fact as made by the Court of Appeals. The cases so holding are legion. I cite only a few. Postal Telegraph-Cable Co. v. Minderhout, 195 Ala. 420, 71 So. 91; Williams v. State, 222 Ala. 584, 133 So. 737; Metropolitan Life Ins. Co. v. Magouirk, 243 Ala. 626, 11 So.2d 466; Jackson v. State, 246 Ala. 669, 22 So.2d 100; Neely v. State, 254 Ala. 486, 48 So.2d 564; Clayton v. Ragsdale, 276 Ala. 321, 161 So.2d 804; Ex parte Thaggard, 276 Ala. 117, 159 So.2d 820; State Department of Industrial Relations v. Ford, 278 Ala. 352, 178 So.2d 190.

We do review the evidence as set out in the record where there is a dissenting opinion in the Court of Appeals and evidence is set out in the dissenting opinion as well as in the majority opinion. Shuttlesworth v. City of Birmingham, 281 Ala. 542, 206 So.2d 348.

In the past we have never gone to the record, in so far as I am advised, to review the evidence set out therein for the purpose of determining whether it was sufficient to present a jury question or to determine its weight even when it appeared from the opinion of the Court of Appeals or when it was asserted in brief of counsel that the evidence was without dispute.

But in this case the court reviews the evidence as set out in the record to determine what the facts really are, not being content to accept the facts as delineated in the opinion prepared by the experienced and respected Presiding Judge of the Court of Criminal Appeals.

The court seems to have followed that course on the premise that "the facts in this case are undisputed," and that when such is the case this court "may go to the record for a more complete understanding of those features treated in the opinion of the Court of Criminal Appeals." In support of the statement last quoted six cases are cited. I will make reference to them in the inverse order in which they are cited in the opinion of the court.

In Hood v. State, 230 Ala. 343, 162 So. 543, the first headnote, in my opinion, shows the inappropriateness of the holding of that case as authority for the proposition for which it is cited in the court's opinion. I quote that headnote:

"Where agreed case was made and filed in trial court, and thereafter certified to Court of Appeals, question presented was one of law arising on record, and Supreme Court, in reviewing decision of Court of Appeals, could look to record in connection with opinion of Court of Appeals (Code 1923, § 6095, as amended by Gen. Acts 1931, p. 409)."

In Hood the trial court was not called upon to decide a question of fact. The facts were stipulated. The question for decision was one of law. The stipulation or agreed statement of the facts was not set out in the opinion of the Court of Appeals, so this court went to the record to determine what the agreed facts were and to determine whether or not the court had correctly applied the law to the facts. To like effect is Miller v. Liberty Nat. Life Ins. Co., 243 Ala. 250, 9 So.2d 132.

In Cranford v. National Surety Corp., 231 Ala. 636, 637, 166 So. 721, 722, it is said:

"On certiorari to the Court of Appeals, we adhere to the rule applicable to com-

mon-law certiorari, that only questions of law will be considered. But that includes the question of whether we agree with the application of the law to the facts as found and recited by that court. Reichert Milling Co. v. George, 230 Ala. 589, 162 So. 402, and cases there cited, Hood v. State, 230 Ala. 343, 162 So. 543, and we only consider the questions which were treated by the Court of Appeals.

"But when there is no dispute about the facts, we examine the record for a more complete understanding of those features of it which are treated. Fairbanks, Morse & Co. v. Dees, 220 Ala. 604, 126 So. 621; Hood v. State, 230 Ala. 343, 162 So. 543. This naturally includes pleadings, charges, and contracts which that court has interpreted in the opinion under consideration.

"That opinion does not in this case interpret pleadings, nor treat demurrers to them, nor many other matters argued in brief on this petition and set out in it. But the result reached by that court is controlled by its interpretation of a contract there referred to. It only sets out one clause of that contract, and we will refer to the record to examine it as a whole in order to consider that clause."

In Vardaman v. Benefit Association of Railway Employees, 263 Ala. 236, 82 So.2d 272, this court was called upon to review a holding of the Court of Appeals that the trial court had erred in sustaining demurrers to a count. The pleadings were not set out *in extenso* in the opinion of the Court of Appeals, so this court, citing *Cranford, supra,* said: "* * * As the case comes before us, however, we may look to the record to aid our understanding of the issues presented. * * *" (263 Ala. 238, 82 So.2d 273) So there is nothing in *Vardaman, supra,* to support the court's action in this case.

In Southern Ry. Co. v. Terry, 268 Ala. 510, 109 So.2d 919, we went to the record to see if the trial court had charged on subsequent negligence, not to make any determination as to the facts. We expressly refused to consider a factual finding of the Court of Appeals, saying: "The Court of Appeals held that the defendant was entitled to the affirmative charge as to Count 1 because of plaintiff's contributory negligence. We are not concerned with that part of the holding." (268 Ala. 511, 109 So.2d 919)

In Helms v. State, 270 Ala. 603, 121 So.2d 106, citing *Cranford, supra,* we went to the record to substantiate the statement made in the opinion of the Court of Appeals to the effect that there was no material variance between the allegation and the proof. We merely quoted from the record the facts which Judge Price summarized in her opinion. Certainly there is nothing in our opinion in *Helms* which justifies the action which the court has taken in this case in going to the record to determine for itself the facts presented in the trial at nisi prius.

In Johnson v. State, 277 Ala. 655, 173 So.2d 824, we pointed out that the Court of Appeals reversed the trial court on the "technical lack of proof of authority in the minister to order the visitors from the church." On the authority of *Cranford, supra,* and other cases to like effect, after saying that the facts were not in dispute, we went to the record to show that the church official there involved was shown to be a pastor rather than a minister as he was denominated in the opinion of the Court of Appeals. This case, in my opinion, comes closer to supporting the court's opinion than any case I have found. But the author of the opinion in that case joins in this special concurrence. It was not intended in that case to open the door to a review by this court of findings of fact made by the Courts of Appeal of this state, whether the facts at nisi prius were disputed or undisputed.

The *Cranford case, supra,* is cited more than any other case for the general proposition that where "there is no dispute about the facts, we examine the record for a

more complete understanding of those features of it which are treated."

I have read every case in which *Cranford, supra,* is cited, according to Shephard's Citations, and in not a single one of them has this court placed the construction on the language last quoted above as is done in the court's opinion in this case.

When this court has said that it will go to the record for a more complete understanding of the features which are treated by the Court of Appeals where there is no dispute about the facts, it has intended to convey the thought that factual issues are not determined by this court in reviewing opinions of the intermediate appellate courts. But when there is no such factual issue, but there is an issue other than factual, the court goes to the record to get a better understanding of the issues treated in the opinion of the Court of Appeals.

It is my studied judgment that the clause in the opinion of the court, "There being no dispute about the facts, * * *" does not justify the court to go to the record to make its own finding of facts.

But be that as it may, in this case there is indeed a dispute as to the facts. In Judge Price's opinion, in summarizing the testimony of Mrs. Cleo Clark, she said in part as follows: "She was unable to testify as to the time she saw the boys, other than it was after dinner." That was Judge Price's evaluation of the testimony of Mrs. Clark on that facet of the case. But the author of this court's opinion places a different evaluation on the testimony of Mrs. Cleo Clark, saying as follows: "We think a significant portion of Mrs. Clark's testimony was that it was 'after dinner,' between 2:30 and 4:00 P. M., that she observed the two boys at the automobile." In another part of the opinion of this court it is said in regard to Mrs. Clark's testimony: "Further, she testified that the two boys were observed by her 'after dinner' between 2:30 and 4:40 P.M." So this court has evaluated Mrs. Clark's testimony in an entirely different way from the way

it was evaluated by Judge Price. The reason for the difference between the authors of the two opinions is that Mrs. Clark's testimony is certainly not clear on the point and, in fact, can be said to be somewhat in conflict.

On direct examination, after testifying that she had seen two boys near Mrs. Bryant's automobile, the following transpired:

"Q. What time was that—about what time?

A. Well, I would say between two thirty and four o'clock, somewhere along there.

THE COURT: What was the time, please, ma'am?

THE WITNESS: Between two thirty and four o'clock, somewheres along there. I don't know—I wasn't in the house along about then and I—

Q. After lunch? After dinner?

A. Yes, sir."

On re-cross-examination of Mrs. Cleo Clark the following transpired:

"Q. You said that at the time you saw these two people around the car down there was between two thirty and four o'clock?

A. Yes, sir, somewhere along there, I don't know just what time it was."

On redirect examination of Mrs. Clark the following occurred:

"Q. What did you say?

A. I said I didn't know what time—just what time—

Q. You just don't know. It was after dinner but you don't know what time it was?

A. That's right."

I think the foregoing shows beyond peradventure the wisdom of the rule that this court should not, in a proceeding of this

kind, undertake to substitute its evaluation of the testimony adduced in the trial court in lieu of that of the Courts of Appeals.

It might be well to point out that the opinion of the court as originally drafted contained a statement to the effect that the evidence was without dispute in that the defendant offered no testimony. When it was pointed out that there could be a dispute or conflict in the evidence of a single witness, much less in the testimony of several witnesses called by one party, the opinion was placed in its present form. It is true that the defendant called no witnesses. But I respectfully submit that the court's opinion is in error in so far as it is said therein that there was no dispute in the evidence in this case. I make that observation, although I reiterate what I have said above, that it doesn't matter whether there was dispute in the evidence or not, it is not for this court to go to the record to determine the facts. In reviewing a factual issue of the kind presented to us in the petition for certiorari in this case, we are limited to reviewing the conclusions reached by the Court of Criminal Appeals on the facts delineated in the opinion of that court.

There is yet another facet of the court's opinion which puzzles me. It is said therein that the evidence is without dispute. How did the author of the opinion arrive at that conclusion? The opinion of the Court of Criminal Appeals does not say the evidence was without dispute. When asked how he arrived at the conclusion that the evidence was without dispute, he replied by saying "that he went to the record." Why did he do that? There is no rule of review requiring such action and, in fact, I entertain the view that under our cases such action is unwarranted.

In the future when an opinion of the Court of Criminal Appeals does not show on its face that the evidence was not in dispute, must we go to the record to make our own finding of facts, despite the fact that facts are set out in the opinion of the Court of Criminal Appeals?

What will be our duty where the Court of Criminal Appeals writes no opinion? In the past, if no federal question was involved, we simply denied the writ. Now, if counsel in brief should say that the evidence was without dispute, it seems to me that under the authority of the court's opinion in this case we can be expected to go to the record to determine the facts and decide whether or not an affirmative instruction should have been given and whether or not the verdict was against the great weight of the evidence.

The court, in my opinion, has opened a Pandora's box which must soon be closed, else the court becomes further and further behind as it is called upon to review factual questions decided by the Courts of Appeal.

It is to be hoped that this case is *sui generis* and that it will fall into the same class as the restrictive railroad ticket, good for that day and train only.

MERRILL and MADDOX, JJ., concur in the foregoing special concurrence of LAWSON, J.